# EXHIBIT A

***EFILED***
Case Number 2021L 000054
Date: 1/15/2021 1:45 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | |
|---|---|
| PAULINE WILLS, individually and on behalf of others similarly situated, </br></br>Plaintiff,</br></br>v.</br></br>AMGUARD INSURANCE COMPANY,</br></br>Defendant. | 2021L 000054</br></br>Case No.: _____</br></br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

COMES NOW Plaintiff, Pauline Wills ("Wills" or "Plaintiff"), individually and on behalf of others similarly situated, and for her Complaint against AmGUARD Insurance Company ("AmGUARD" or "Defendant"), states and alleges the following:

### PARTIES AND RESIDENCY

1. Plaintiff owns a residence at 5727 Warren Avenue, East St. Louis, Illinois, located in St. Clair County, Illinois.

2. AmGUARD is organized under the laws of the State of Pennsylvania with its headquarters in Wilkes-Barre, Pennsylvania.

3. AmGUARD does business in St. Clair County.

4. The putative class members for this class action from State of Illinois, as more specifically defined below, are spread throughout all of the counties of the State of Illinois.

## FACTUAL BACKGROUND

5. Plaintiff contracted with AmGUARD for an insurance policy providing for coverage for certain losses to a dwelling and other structures owned by Plaintiff located at 5727 Warren Avenue, East St. Louis, Illinois ("the Residence Premises").

6. At all times relevant to this action, Plaintiff's property was insured by AmGUARD Policy No. PAHO065312 ("the Policy"). The Policy was in effect from October 31, 2019 to October 31, 2020. Wills paid AmGUARD premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this pleading.

7. Defendant sells insurance covering properties in Illinois, including properties in Madison County, Illinois, as well as properties in the States of Arizona, Arkansas, California, Kentucky, Louisiana, Maryland, Mississippi, Ohio, South Carolina, Tennessee, Utah, Virginia, and Wisconsin.

8. This lawsuit does not concern property insurance coverage under AmGUARD's policies of insurance for personal property, such as furniture and clothes. This lawsuit only concerns property coverage for dwellings, homes, buildings and other structures, *i.e.*, structural claims.

9. On or about April 27, 2020, the Residence Premises suffered damage covered by the Policy. The damage to the Residence Premises requires replacement and/or repair.

10. Plaintiff immediately submitted a claim to AmGUARD, and AmGUARD through its employees or agents determined the loss to the Residence Premises was covered by the terms of the Policy.

11. AmGUARD calculated its actual cash value ("ACV") payment obligations to Plaintiff by first estimating the cost to repair or replace the damage with new materials

(replacement cost value, or "RCV"), and then AmGUARD subtracted the estimated depreciation. This is the methodology used by AmGUARD to calculate its ACV payment obligations to its policyholders, and is referred to as the "replacement cost less depreciation" methodology.

12. Defendant did not use any other methodology to calculate its ACV obligation to the Plaintiff.

13. More specifically, AmGUARD sent an adjuster to inspect the Residence Premises and estimate the ACV.

14. AmGUARD's adjuster used a commercially-available computer software program to estimate RCV, depreciation, and ACV. The software used to calculate the payment to the Plaintiff is called Xactimate®.

15. As set forth in a written Xactimate® estimate provided to Wills and dated May 29, 2020, AmGUARD's adjuster determined that Wills had suffered a covered loss in the amount of $97,209.48 (the estimated RCV) to her property. The estimate included the cost of materials and labor required to complete the repairs.

16. In calculating its ACV payment obligations to Wills, AmGUARD subtracted from the RCV estimate $27,558.37 for estimated depreciation. This resulted in an ACV of $69,651.11. Wills was underpaid on her ACV claim as more fully described below.

17. When it calculated Plaintiff's ACV benefits, Defendant withheld costs for both the materials and labor required to repair or replace buildings and structures as depreciation, even though labor does not depreciate in value over time. Defendant withheld labor costs throughout its ACV calculations as depreciation.

18. Like all property insurance claims estimating software, the specific commercial claims estimating software used by AmGUARD allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

19. Xactimate®'s option to withhold or not withhold labor as depreciation results in a tremendous difference between the amount a property insurer will pay for the ACV of identical claims. Assuming hypothetically, a simple property claim in East St. Louis, Illinois wherein a policyholder's laminate wood floor, totaling 1500 square feet, was destroyed in December, 2020. The property adjuster determines that the laminate floor had depreciated by one-third of its useful life at the time of loss.

20. If the insurance company adjusts the claim under the traditional, "materials-only" approach using Xactimate® software (and using Xactimate®'s December, 2020 price list for East St. Louis, Illinois), the flooring would be depreciated by $1,485.00, and the company would issue an ACV payment for $8,862.00, as reflected by the Xactimate® screen shot below:

**Dwelling - Raw Sewage Example**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1a. Remove Snaplock Laminate - simulated wood flooring | 1,500.00 SF | 1.30 | 0.00 | 1,950.00 | <0.00> | 1,950.00 |
| 1b. Replace Snaplock Laminate - simulated wood flooring | 1,500.00 SF | 5.40 | 297.00 | 8,397.00 | <1,485.00> | 6,912.00 |
| **Totals: Dwelling - Raw Sewage Example** | | | 297.00 | 10,347.00 | 1,485.00 | 8,862.00 |

21. However, if the same insurance company, using the identical measurements and condition conclusions, toggles on the "depreciate removal" and "depreciate non-material" option settings within Xactimate®'s software (which now withholds portions of the labor necessary to both remove and then reinstall replacement flooring), the flooring is now depreciated by $3,316.50, resulting in an ACV payment for only $7,030.50, as reflected by the Xactimate® screen shot below:

Page 4 of 12

**Dwelling - Raw Sewage Example**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. R&R Snaplock Laminate - simulated wood flooring | 1,500.00 SF | 6.70 | 297.00 | 10,347.00 | <3,316.50> | 7,030.50 |
| **Totals: Dwelling - Raw Sewage Example** | | | 297.00 | 10,347.00 | 3,316.50 | 7,030.50 |

22. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

23. The Policy, and the other property forms at issue in this pleading, do not permit the withholding of labor as depreciation. Certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement is referred to as a "labor depreciation permissive form."

24. The Policy does not contain a labor depreciation permissive form.

25. AmGUARD's withholding of labor costs as depreciation, under a policy of insurance that does not allow the same, resulted in Plaintiff receiving payment for her loss in an amount less than she was entitled to receive. AmGUARD breached its obligations under the Policy by improperly withholding the cost of labor as depreciation.

26. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the estimate.

27. While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as

Page 5 of 12

depreciation under the policy forms at issue when the carrier chooses to use a replacement cost less depreciation methodology.

28. Defendant's failure to pay the full cost of the labor necessary to return the Insured Premises to the *status quo ante* breached the Policy.

29. Plaintiff disputes whether portions of the labor, as determined by Defendant itself, may be withheld by Defendant as "depreciation" from Defendant's ACV payment under the terms and conditions of the Policy.

30. Defendant materially breached its duty to indemnify Plaintiff by withholding labor costs from her ACV payment as depreciation, thereby paying less than Plaintiff was entitled to receive under the terms of the Policy, including but not limited to depriving Plaintiff of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

31. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

32. Pursuant to Illinois Code of Civil Procedure 5/2-802(a), Plaintiff brings this lawsuit as a class action on behalf of herself and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, adequacy of representation and predominance. Only to the extent it is a requirement under applicable law, the proposed class satisfies the elements of ascertainability and typicality.

33. The proposed class that Plaintiff seeks to represent is tentatively defined as follows:

All AmGUARD policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Arizona, Arkansas, California,

Illinois, Kentucky, Louisiana, Maryland, Mississippi, Ohio, South Carolina, Tennessee, Utah, Virginia and Wisconsin; and (2) for which AmGUARD accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law and arguments of counsel.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment.

The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms are not permitted.

34. Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

35. The members of the proposed class are so numerous that joinder of all members is impracticable. Defendant is a member of the Berkshire Hathaway Group, one of the largest property and casualty insurance groups in the United States. Plaintiff reasonably believes that hundreds or thousands of people have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are readily identifiable through records available to Defendant.

36. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

37. Defendant has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Defendant will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

38. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to whether Defendant's policy forms permit or prohibit the withholding of labor in the calculation of ACV payments under the replacement cost less depreciation methodology and if it is unclear, whether Defendant's policy language is ambiguous.

39. Only to the extent required by law, Plaintiff's claim is typical of the claims of the proposed class members because Plaintiff's claim arose from the same practice that give rise to the claims of the members of the proposed class and is based on the same legal theories. Plaintiff is not different in any relevant matter from members of the proposed class.

40. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the resources to litigate this class action, and Plaintiff and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties. Plaintiff reserves the right to join other unnamed class members into this lawsuit.

41. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and

prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

42. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

43. Questions of law and fact, particularly the propriety of withholding labor from ACV payments under a replacement cost less depreciation methodology, predominate over questions affecting only individual members.

44. Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

45. Plaintiff may seek, in the alternative, certification of an issues class or classes.

## COUNT I - BREACH OF CONTRACT

46. Plaintiff realleges the foregoing paragraphs as if set forth in full here.

47. Defendant entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Defendant and Plaintiff, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

48. These policies of insurance are binding contracts under Arizona, Arkansas, California, Illinois, Kentucky, Louisiana, Maryland, Mississippi, Ohio, South Carolina, Tennessee, Utah, Virginia and Wisconsin law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

49. Defendant drafted the insurance policies at issue, which are essentially identical as relevant to this litigation when Defendant is calculating ACV under a replacement cost less depreciation methodology for claims Defendant itself has determined are covered.

50. In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiff and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy, as determined by Defendant itself.

51. Defendant breached its respective contractual duties to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully withholding labor costs.

52. Defendant's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefitted and continue to benefit Defendant. Defendant's actions damaged and continue to damage Plaintiff and members of the proposed class.

53. Defendant's actions in breaching its contractual obligations caused damages to Plaintiff and members of the proposed class.

54. Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

55. Plaintiff and other putative class members seek any equitable relief, as they may be permitted by applicable law, to remedy the ongoing breaches of contract.

## COUNT II - DECLARATORY JUDGMENT AND RELIEF

56. Plaintiff realleges the foregoing paragraphs as if set forth in full here.

57. This Court is empowered by Illinois law to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

58. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

59. Plaintiff and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

60. Plaintiff seeks, individually and on behalf of the proposed class, a declaration that Defendant's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

61. Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

62. Plaintiff and members of the proposed class have and will continue to suffer injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully request that this Court:

1. Certify the class identified here or as amended during litigation;

2. Enter a declaratory judgment as requested herein;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendant and their officers, agents, successors, employees, representatives, and any

and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Defendant specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

6. Award compensatory damages to Plaintiff for all amounts to which she is entitled;

7. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8. Award Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

Dated: January 15, 2021

PAULINE WILLS, individually and on behalf of all others similarly situated,

*/s/ Christopher W. Byron*
Christopher W. Byron, #6230810
Christopher J. Petri, #6257456
Byron Carlson Petri & Kalb, LLC
411 St. Louis Street
Edwardsville, Illinois 62025
Phone: (618) 655-0600
Fax: (618) 655-4004
cwb@bcpldaw.com; cjp@bcpldaw.com

David T. Butsch #06205434
Christopher E. Roberts #6302857
Butsch Roberts & Associates LLC
231 S. Bemiston Ave., Suite 260
Clayton, MO 63105
Tel: (314) 863-5700
Fax: (314) 863-5711
butsch@butschroberts.com; roberts@butschroberts.com

***EFILED***
Case Number 2021L 000054
Date: 1/15/2021 1:45 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| PAULINE WILLS, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 2021L 000054 |
| | ) | Case No.: _____ |
| v. | ) ) | DEMAND FOR JURY TRIAL |
| AMGUARD INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## AFFIDAVIT

COMES NOW Christopher W. Byron, being duly sworn upon his oath, and states to the Court as follows:

1. That I am one of the attorneys of record for the Plaintiff, Pauline Wills, individually and on behalf of all others similarly situated, and it is my belief that Plaintiff's damages are in excess of $50,000.00, based upon my investigation to date.

FURTHER AFFIANT SAYETH NOT.

_____
Christopher W. Byron

SUBSCRIBED AND SWORN TO before me this 15th day of January, 2021.

OFFICIAL SEAL
JAMI MILLER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/24/23

_____
Notary Public

Page 1 of 1

***EFILED***
Case Number 2021L 000054
Date: 1/15/2021 1:45 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# IN THE CIRCUIT COURT
## THIRD JUDICIAL CIRCUIT
### MADISON COUNTY, ILLINOIS

| | |
|---|---|
| PAULINE WILLS, individually and on behalf of others similarly situated, ) ) ) | 2021L 000054 |
| Plaintiff, ) ) | Case No.: _____ |
| v. ) ) | DEMAND FOR JURY TRIAL |
| AMGUARD INSURANCE COMPANY, ) ) | |
| Defendant. ) | |

## ENTRY OF APPEARANCE

COMES NOW Christopher W. Byron and Christopher J. Petri of Byron Carlson Petri & Kalb, LLC and hereby enter their appearance as on behalf of Plaintiff, Pauline Wills, individually and on behalf of all other similarly situated.

Dated: January 15, 2021

Pauline Wills, individually and on behalf of all others similarly situated,

*/s/ Christopher W. Byron*
Christopher W. Byron, #6230810
Christopher J. Petri, #6257456
Byron Carlson Petri & Kalb, LLC
411 St. Louis Street
Edwardsville, Illinois 62025
Phone: (618) 655-0600
Fax: (618) 655-4004
cwb@bcpldaw.com
cjp@bcpldaw.com

*Attorneys for Plaintiff and*
*Putative Class Representative*

***EFILED***
Case Number 2021L 000054
Date: 1/15/2021 1:45 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# IN THE CIRCUIT COURT
## THIRD JUDICIAL CIRCUIT
### MADISON COUNTY, ILLINOIS

| | |
|---|---|
| PAULINE WILLS, individually and on behalf of others similarly situated, ) ) ) | 2021L 000054 |
| Plaintiff, ) ) | Case No.: _____ |
| v. ) ) | DEMAND FOR JURY TRIAL |
| AMGUARD INSURANCE COMPANY, ) ) | |
| Defendant. ) | |

## JURY DEMAND

COME NOW Byron Carlson Petri & Kalb, LLC and hereby requests a trial by jury of twelve (12) in this cause on all counts.

Respectfully Submitted:

BYRON CARLSON PETRI & KALB, LLC

By: _/s/ Christopher W. Byron_
    Christopher W. Byron, #6230810
    Christopher J. Petri, #6257456
    Brian R. Kalb, #6275228
    411 St. Louis Street
    Edwardsville, Illinois 62025
    Phone: 618.655.0600
    Fax:    618.655.4004



**RECEIVED**
Berkshire Hathaway Guard

JAN 2 0 2021

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | |
|---|---|
| PAULINE WILLS, individually and on behalf of others similarly situated, ) ) ) | **2021L 000054** |
| Plaintiff, ) | Case No.: _____ |
| ) | |
| v. ) | DEMAND FOR JURY TRIAL |
| ) | |
| AMGUARD INSURANCE COMPANY, ) ) | |
| Defendant. ) | |

## SUMMONS

To the defendant: AmGUARD Insurance Company

    YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance, in the office of the clerk of this court Madison County Courthouse, 155 N. Main Street, Edwardsville, IL 62025 within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGEMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the officer:

    This summons must be returned by the officer or other persons to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed. This summons may not be served later than 30 days after its date.

    "E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp."

1/15/2021

WITNESS _____, 2021.
/s/ Thomas McRae

(Seal of court)

_____
Clerk of the Court
/s/ Terianne Edwards
_____
Associate Circuit Clerk-Deputy

Page 1 of 2

**Attorney for Petitioner:**

Christopher W. Byron, #6230810
Byron Carlson Petri & Kalb, LLC
411 St. Louis Street
Edwardsville, Illinois 62025
Telephone: (618) 655-0600
cjp@bcpklaw.com

                                        Date of service: _____, 2021.
                                        (To be inserted by officer on copy left with defendant or other person)

January 15, 2021

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

CASE NUMBER: 2021 L 000054

WILLIS PAULINE INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARL

Plaintiff(s)

VS.

AMGUARD INSURANCE COMPANY

Defendant(s)

*[Stamp: JAN 15 2021 CLERK OF CIRCUIT COURT #77 THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS]*

## ASSIGNMENT ORDER

The above case is hereby assigned to the Honorable SARAH SMITH for setting and disposition.

Clerk to send copies of this Order to the attorneys of record and any pro se party.

DATE: January 15, 2021

s/Bill Mudge
Chief Judge

NOT AN OFFICIAL COPY

***EFILED***
Case Number 2021L 000054
Date: 2/3/2021 1:10 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# AFFIDAVIT OF SERVICE

| Case: 2021L000054 | Court: CIRCUT COURT THIRD JUDICIAL CIRCUT MADISON COUNTRY, ILLINIOS | County: | Job: 5267451 (2021L000054) |
|---|---|---|---|
| Plaintiff / Petitioner: Pauline Wills | | Defendant / Respondent: AmGuard Insurance Company | |
| Received by: Wilkes Consulting, LLC | | For: Bryon Carlson Petri & Kalb, LLC | |
| To be served upon: AmGuard | | | |

I, Chad Vail, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address: AmGuard, 39 public square, Wilkes Barre, Pa 18703
Manner of Service: Authorized to Accept (Shelley Senghaas), Jan 20, 2021, 11:00 am EST
Documents: Summons, Class Action Complaint, Affidavit, Entry of Appearance, Jury Demand

Additional Comments:
1) Successful Attempt: Jan 20, 2021, 11:00 am EST at 39 public square, Wilkes Barre, Pa 18703 received by AmGuard. Served to Shelley Senghaas. Authorized to accept

_____  2-3-21
Chad Vail            Date

Wilkes Consulting, LLC
210 Division Street
Kingston, PA 18704
5706069206

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

2-3-21     Dec 05, 2024
Date       Commission Expires

Commonwealth of Pennsylvania - Notary Seal
Ralph Konderchek, Notary Public
Luzerne County
My commission expires December 5, 2024
Commission number 1302364
Member, Pennsylvania Association of Notaries

NOT AN OFFICIAL COPY